AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 3:24-mj-70797 MAG |
| | ) | |
| Deric Gonzalez-Rodriguez | ) | |
| *Defendant(s)* | ) | |

FILED
May 29 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of May 10, 2024 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) | -Possesion with intent to distribute a federally controlled substance |

This criminal complaint is based on these facts:

See attached affidavit of DEA TFO Domenico Discenza.

☑ Continued on the attached sheet.

/s/ Domenico Discenza
*Complainant's signature*

Approved as to form  Patrick D. Robbins
First AUSA Patrick D. Robbins

Domenico Discenza, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/29/2024

*Judge's signature*

City and state: San Francisco, California

Sallie Kim, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Deric Gonzalez-Rodriguez (GONZALEZ-RODRIGUEZ) with 21 U.S.C. §§ 841(a)(1), (b)(1)(C) based on his possessing with the intent to distribute a mixture or substances containing a detectable amount of fentanyl and methamphetamine on May 10th, 2024, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have worked as a sworn officer for the SFPD for approximately 25 years. I have been assigned as a

1

Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law, including drug offenses.

5.     In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

6.     During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7.     Based on my training and experience, as well as conversations I have had with drug dealers, informants, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8. I have also had discussions with other law enforcement officers about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. Based on my training and experience, I am familiar with the various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9. I am familiar with the facts and circumstances of the investigation through my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl and methamphetamine are Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

11. On May 10, 2024, GONZALEZ-RODRIGUEZ was arrested by SFPD officers in the area of 7th Street and Stevenson in the Tenderloin/ South of Market Area in San Francisco, California, next to the United States Courthouse for the Ninth Circuit Court of Appeals and within the Northern District of California. Based on the facts described below, there is probable cause to believe that GONZALEZ-RODRIGUEZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl and methamphetamine.

12. On May 10. 2024, at approximately 04:30 a.m., San Francisco Police Officers Matthew Bonilla and Matthew Agoncillo were on patrol in the area of 7th Street and Stevenson,

3

in uniform and operating a marked police vehicle. This area is well known to officers as an area where narcotics are bought, sold, and consumed. This area has also generated numerous citizen complaints regarding the open-air drug market.

13. While traveling eastbound on Stevenson Alley at 7th Street, Officer Bonilla observed a male later identified as GONZALEZ-RODRIGUEZ on the northeast corner of Stevenson and 7th Street standing in front of multiple individuals in close- proximity and appearing to speak to each other.

14. Officer Bonilla observed GONZALEZ-RODRIGUEZ holding a plastic baggy with a white substance inside of it in one hand and holding a large black plastic bag in the other hand. Based on Officer Bonilla's training and experience, he suspected the white substance to be narcotics. The amount of white substance being held by GONZALEZ-RODRIGUEZ was a large amount and appeared to the Officer to be packaged for sales. Officer Bonilla made eye contact with GONZALEZ-RODRIGUEZ, who then placed the white substance that was inside a plastic baggie into the large black plastic bag he had been holding with the other hand. The individuals who had been congregating dispersed in different directions.

15. Officer Bonilla exited his patrol vehicle and walked towards GONZALEZ-RODRIGUEZ, who immediately stopped. Officers Bonilla and Agoncillo placed GONZALEZ-RODRIGUEZ in handcuffs and informed him that he was being detained for possession of suspected narcotics. As the officers handcuffed him, GONZALEZ-RODRIGUEZ placed the large black plastic baggy onto a window ledge. Officer Bonilla observed a large quantity of suspected narcotics inside of the bag in plain view along with digital scales. Drug dealers commonly use digital scales to weigh drugs for individual sales. The area of 7th Street and Stevenson Street along with other areas within the Tenderloin are known to Officer Bonilla and other officers as areas where narcotics are commonly sold and/or used and generate numerous calls for a police response based on open-air drug markets. Officer Bonilla has made multiple narcotics arrests in this area. Based upon these circumstances and his observations relating to

GONZALEZ-RODRIGUEZ described above, Officer Bonilla placed GONZALEZ-RODRIGUEZ under arrest.

16. Officer Bonilla seized the black plastic bag and two digital scales, suspected methamphetamine in a clear plastic bag, and 3 bags of suspected fentanyl. During a custodial search of GONZALEZ-RODRIGUEZ, Office Bonilla located $97.00 in U.S. Currency in various denominations and suspected marijuana. It is common for street level narcotics transactions to involve the use of various denominations to purchase the drugs, and the drug dealer to retain the proceeds on their person. During the search incident to arrest, Officer Bonilla did not locate any ingestion paraphernalia in GONZALEZ-RODRIGUEZ's possession, further indicating the seized drugs were possessed for sales.

17. At Tenderloin Station, Officer Bonilla used the TrueNarc device to presumptively test the drugs and learned the following weights and results:

   a. The suspected methamphetamine tested presumptive positive for methamphetamine and weighed 24.1 gross grams.
   b. One clear plastic baggie contained suspected fentanyl consisting of numerous broken up chunks, which tested presumptive positive for fentanyl and weighed 43.8 grams.
   c. A second clear plastic baggie contained suspected fentanyl in a powder form, which tested presumptive positive for fentanyl and weighed 1.6 gross grams and.

18. A third bag of suspected fentanyl weighed 39.8 gross grams but tested positive for mannitol, which is not a controlled substance. Based on my training, experience, and conversations with other officers, I know that mannitol is used as a cutting agent so drug dealers can extend their supply of fentanyl and increase profit. Mannitol also closely resembles fentanyl in its white crystalline form making it visually indistinguishable. There was also a small green leafy vegetable matter of suspected marijuana which was not tested.

19. The following are photographs of the narcotics seized by Officer Bonilla from GONZALEZ-RODRIGUEZ on May 10, 2024:

5



Methamphetamine gross grams24.1 (a)



Fentanyl 43.8 gross grams (b)



Fentanyl 1.6 gross grams (c)



Mannitol 39.8 gross grams (d)

20. GONZALEZ-RODRIGUEZ's identity was confirmed through fingerprints.

21. Based on my knowledge training, experience, and consultation with other officers I am aware that those engaged in distribution, sales or furnishing of a controlled substance often

6

have multiple types of drugs to serve their customers. This is supported by the variety of drugs possessed by GONZALEZ-RODRIGUEZ, which included methamphetamine and fentanyl, the U.S. Currency in various denominations, and the amount of fentanyl and methamphetamine which was a greater quantity than typically possessed for mere personal use.

22.  GONZALEZ-RODRIGUEZ also possessed two (2) digital scales which I know from my training and experience are commonly used to weigh drugs prior to a sale or when packaging drugs for individual sales. As correctly noted by Officer Bonilla, GONZALEZ-RODRIGUEZ's possession with intent to distribute a controlled substance is further reinforced by the fact that he possessed the items described above in the area of 7th and Stevenson at 4:30 a.m., in an area known for illegal drug sales, purchase and consumption.

## CONCLUSION

23.  Based on the information I describe above, I respectfully submit that there is probable cause to believe that on or about May 10th, 2024, GONZALEZ-RODRIGUEZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl and methamphetamine.  Accordingly, I request that the Court approve the attached criminal complaint and issue a warrant for his arrest.

/s/
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and

4(d) on May 29, 2024.

_____
HONORABLE SALLIE KIM
United States Magistrate Judge

2090-9967-9745, v. 1